796 S.E.2d 541

**Anna Dillard WILSON, Respondent,**

v.

**S.C. DEPARTMENT OF MOTOR VEHICLES, Appellant.**

**Appellate Case No. 2015-000887**
**Opinion No. 5464**

Court of Appeals of South Carolina.

Submitted December 1, 2016
Filed January 11, 2017
Rehearing Denied March 10, 2017

Frank L. Valenta, Jr., Philip S. Porter, and Brandy Anne Duncan, all of Blythewood, for Appellant.

John D. Elliott, of Law Offices of John D. Elliott, P.A., of Columbia, for Respondent.

WILLIAMS, J.:

The South Carolina Department of Motor Vehicles (the DMV) appeals the circuit court's order enjoining the DMV from suspending Anna Dillard Wilson's driver's license five years after her conviction for driving under the influence of alcohol (DUI). We affirm.

## FACTS/PROCEDURAL HISTORY

On November 22, 2008, an officer with the Irmo Police Department arrested Wilson for DUI. Subsequently, on June 11, 2009, Wilson pleaded guilty to the same offense before the Irmo Municipal Court.[1] Following her conviction, Wilson paid the requisite fines and enrolled in and completed the Alcohol and Drug Safety Program (ADSAP). In August 2009, Wilson contacted a local DMV branch to obtain a restricted driver's license. However, the DMV informed her there was no DUI conviction on her record. Wilson then contacted the Irmo Town Clerk and was informed her DUI ticket was sent to the DMV on July 1, 2009. Thereafter, Wilson contacted her insurance agent, who then went to another local DMV branch to inquire about the conviction, but was similarly told that no DUI conviction existed on Wilson's record.

The DMV regularly conducts audits of all outstanding tickets for the previous year in every jurisdiction that issues a traffic citation, including the Irmo Police Department. Wilson's DUI ticket was included in the audit reports for 2010, 2011, and 2013.[2] The 2010 and 2011 audit reports indicated the ticket was "in court," and the 2013 audit report indicated the ticket was sent to the DMV. However, the DMV did not have a record of receiving the ticket in 2013, and that same year, the DMV requested the Irmo Police Department send a certified copy of the ticket. Eventually, on May 20, 2014, the DMV received a certified copy of Wilson's ticket. On May 27,

---

1. As part of her conviction, Wilson's driver's license was suspended for ninety days—running from August 2009 through November 2009—due to her noncompliance with the implied consent statute, S.C. Code Ann. § 56–5–2950 (Supp. 2009).

2. The DMV did not receive an audit report from Irmo in 2012.

2014, four working days after receiving the ticket and nearly five years after the DUI conviction, the DMV notified Wilson that her driver's license would be suspended as a result of her June 2009 DUI conviction.

On June 9, 2014, Wilson brought an action against the DMV in the circuit court for declaratory and injunctive relief. Wilson also moved for a temporary restraining order, which the circuit court granted. Following a hearing on the issues, the circuit court issued an order on March 23, 2015, permanently enjoining the DMV from suspending Wilson's driver's license. In addition to finding that Wilson had no other remedy at law, the court found the five-year lapse between Wilson's conviction and her suspension would deprive her of fundamental fairness required by due process and cause her undue hardship. This appeal followed.

## STANDARD OF REVIEW

"Actions for injunctive relief are equitable in nature." *Hipp v. S.C. Dep't of Motor Vehicles*, 381 S.C. 323, 324, 673 S.E.2d 416, 416 (2009) (per curiam) (quoting *Shaw v. Coleman*, 373 S.C. 485, 492, 645 S.E.2d 252, 256 (Ct. App. 2007)). In an action in equity, an appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Id.* at 325, 673 S.E.2d at 416.

## LAW/ANALYSIS

The DMV argues the circuit court erred in ruling Wilson's driver's license suspension would violate standards of fundamental fairness, cause Wilson hardship, and leave Wilson without a remedy at law. We disagree.

"A person's interest in his driver's license is property that a state may not take away without satisfying the requirements of due process. Due process is violated when a party is denied fundamental fairness." *Id.* at 325, 673 S.E.2d at 417 (internal citation omitted).

Our supreme court has addressed whether suspending one's driver's license after a lengthy delay following a DUI conviction violated due process on two prior occasions. In *State v. Chavis*, the supreme court did not find a due process violation when the State was not at fault for a one-year delay between

William Chavis's conviction for DUI and the suspension of his driver's license by the highway department immediately upon learning of the conviction. 261 S.C. 408, 409–11, 200 S.E.2d 390, 390–91 (1973). Specifically, the court noted there was no inference or indication in the record that Chavis suffered any prejudice as a result of the one-year delay. *Id.* at 411, 200 S.E.2d at 391.

Additionally, the court found Chavis did not seek to have his suspensions "promptly ordered so that he could get [the suspensions] behind him[,]" but rather, "he simply kept quiet and continued to drive in the hope that his license suspensions would somehow or other get overlooked and never be imposed." *Id.* Accordingly, the supreme court held a driver is not entitled to relief from the imposition of a suspension when an unexplained delay on the part of reporting officials is unaccompanied by a showing of real prejudice to the driver. *Id.* at 412, 200 S.E.2d at 392. The supreme court, however, acknowledged "there might be circumstances under which it could be successfully argued or soundly held that the State had no right to suspend a driver's license after a long delay." *Id.* at 411, 200 S.E.2d at 391.

In 2009, the supreme court addressed such a circumstance in *Hipp*, 381 S.C. at 323, 673 S.E.2d at 416. In that case, Charles Hipp was convicted of DUI in Georgia in 1993, but the South Carolina DMV did not receive notice of the conviction from Georgia until 2005, and upon receipt, notified Hipp that his driver's license would be suspended. *Id.* at 324, 325 n.2, 673 S.E.2d at 416, 417 n.2. The court noted neither the South Carolina DMV nor Hipp was at fault for the delay, but instead, recognized that the State of Georgia, alone, was responsible. *Id.* at 325 n.2, 673 S.E.2d at 417 n.2. Nevertheless, the court found the imposition of a suspension after a more than twelve-year delay, when Hipp was without fault, was "manifestly a denial of fundamental fairness." *Id.* at 325, 673 S.E.2d at 417.

Under the circumstances of the instant case, we find a five-year delay between Wilson's DUI conviction and the suspension is fundamentally unfair. Indeed, while the DMV claims the facts here—that the DMV did not cause the five-year delay, Wilson cannot associate any injury to a delay attribut-

able to the DMV, and Wilson argued she would have served her suspension earlier had she known about it—are akin to *Chavis*, we find this case falls under the circumstances envisioned by our supreme court in *Chavis*. *See* 261 S.C. at 411, 200 S.E.2d at 391 ("[T]here might be circumstances under which it could be successfully argued or soundly held that the State had no right to suspend a driver's license after a long delay. . . .").

Upon our review, we note the record contains evidence of specific injuries and prejudice, which were absent in *Chavis*, that Wilson believed would result from a suspension five years after her conviction. *See id.* (finding no standing to challenge the enforcement of various statutory provisions "in the absence of injury or prejudice resulting to [Chavis] from the delay which injury he simply has not shown"). Wilson testified she lost her job after her DUI arrest, and it took her two years to find new employment as an office manager. Wilson also stated that, as part of her new job, she is required to travel on behalf of the company, and a suspension of her driver's license may cause her to lose her current job. According to Wilson, losing her current job would cause severe economic hardship because she has two mortgage payments and would not have a steady stream of income to make these payments. Based on her statements, we find Wilson demonstrated a high likelihood of injury or potential prejudice if her driver's license is suspended.[3]

Additionally, the record demonstrates that Wilson, after completing the ADSAP program in 2009, approached the DMV to find out how to obtain a restricted driver's license in lieu of a suspension. Furthermore, when informed the DMV had no record of her DUI conviction, Wilson contacted the Irmo Town Clerk to inquire about the status of her conviction, and even sent her insurance agent to the DMV to inquire

---

3. The DMV notes several cases from other jurisdictions upholding suspensions after lengthy delays in support of its argument that an administrative delay must be accompanied by a showing of prejudice to a substantial right to violate due process and fundamental fairness. While we are mindful of these cases, we find them unpersuasive and distinguishable from the instant case because the outer limit of the delays in any of the other cases is three-and-a-half years, whereas here, the facts involve a five-year delay and a showing of prejudice.

about filing insurance forms related to her DUI conviction. Thus, we find Wilson did not simply "keep quiet" about her suspension, but instead, actively sought a resolution to her pending suspension. *Cf. id.* ("For aught the record shows, [Chavis] simply kept quiet and continued to drive in the hope that his license suspensions would somehow or other get overlooked and never be imposed.").

▮ Finally, the DMV asserts Wilson acted with unclean hands, and according to *Hipp*, she was not denied fundamental fairness because she was responsible for the delay as she "was the only one that knew, at that time, her DUI conviction had not been reported to the DMV as required." We, however, find this argument is not preserved for review because the DMV failed to plead the doctrine of unclean hands as an affirmative defense in its answer or raise it to the circuit court.[4] *See Allendale Cty. Bank v. Cadle*, 348 S.C. 367, 377–78, 559 S.E.2d 342, 347–48 (Ct. App. 2001) (finding an issue not preserved for review because the appellants failed to plead the doctrine of unclean hands as an affirmative defense).

## CONCLUSION

In conclusion, we find, under the facts of this particular case, the imposition of a suspension after a five-year delay is a denial of fundamental fairness in violation of due process when sufficient evidence of prejudice exists in the record and neither party is at fault for the delay. Thus, based on the analysis

---

4. We also find that any argument relating to Wilson not having another remedy at law is either unpreserved or abandoned. Initially, we note that, in its final brief, the DMV contends the circuit erred in ruling that Wilson has no other remedy at law. However, the DMV cites no legal authority and its argument is largely conclusory. Thus, we believe the DMV has abandoned this issue and we need not address its merits. *See Snow v. Smith*, 416 S.C. 72, 91 n.7, 784 S.E.2d 242, 252 n.7 (Ct. App. 2016) (finding the appellants abandoned their argument because they failed to provide legal citations or authority). To the extent the DMV argues another remedy exists or Wilson's hardship is reduced because she can now install an ignition interlock device on her car pursuant to the retroactivity clause in Emma's Law, S.C. Code Ann. § 56–5–2941(T) (Supp. 2016), we find this argument is not preserved because it was first raised in the DMV's reply brief. *See Spivey ex rel. Spivey v. Carolina Crawler*, 367 S.C. 154, 161, 624 S.E.2d 435, 438 (Ct. App. 2005) (refusing to consider issues first raised in the reply brief).

set forth above, the circuit court's order enjoining the DMV from suspending Wilson's driver's license is

**AFFIRMED.**[5]

THOMAS and GEATHERS, JJ., concur.

---

5. We decide this case without oral argument pursuant to Rule 215, SCACR.