800 S.E.2d 493

**James Winston DAVIS, Jr., Respondent,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES, Appellant.**

**Appellate Case No. 2015-001622**
**Opinion No. 5484**

Court of Appeals of South Carolina.

Heard February 13, 2017
Filed May 3, 2017

Frank L. Valenta, Jr., Philip S. Porter, and Brandy Anne Duncan, all of the South Carolina Department of Motor Vehicles, of Blythewood, for Appellant.

H. Wayne Floyd, of Wayne Floyd Law Office, and Frank Anthony Barton, both of West Columbia, for Respondent.

WILLIAMS, J.:

The South Carolina Department of Motor Vehicles (DMV) appeals the administrative law court's (ALC) final order reinstating James Davis's driver's license. The DMV argues the ALC erred in finding the suspension of Davis's license violated the standards of fundamental fairness required by due process. We affirm.

## FACTS/PROCEDURAL HISTORY

Davis was convicted for driving under suspension (DUS) on February 19, 2004. On February 14, 2005, he surrendered his driver's license to the DMV. Davis was again convicted for DUS on May 5, 2005. Thereafter, on June 28, 2005, the DMV notified Davis it would classify him as a habitual offender and suspend his license if he was convicted of another major

violation under the habitual offender statute [1] within a three-year period. On October 20, 2006, Davis was convicted in Lexington County of his third DUS charge within a three-year period for a ticket he received on May 17, 2005.

On April 26, 2010, the DMV reinstated Davis's driver's license after he paid all fees and met all requirements necessary to reinstate his license. At that time, the DMV had neither received notice of Davis's third DUS conviction nor classified Davis as a habitual offender. However, on September 22, 2011, the DMV received a copy of Davis's third DUS ticket from the Lexington County Sheriff's Department. Because the DMV only received a copy of one side of the ticket and was unable to determine the type of conviction Davis received, the DMV requested additional information from the sheriff's department on April 20, 2012. On October 25, 2012, the DMV received the requested information from the sheriff's department and subsequently posted it to his driving record on December 5, 2012. After posting the third DUS conviction to his driving record, the DMV notified Davis he was declared a habitual offender for accumulating three DUS convictions within a three-year period. Consequently, the DMV indicated it would suspend Davis's license for five years.

On March 19, 2013, Davis appeared before an Office of Motor Vehicle Hearings (OMVH) hearing officer for review of the DMV's decision to suspend his license. At the hearing, Davis testified he did not have a driver's license from 2005 to 2010. Davis explained he paid all reinstatement fees and complied with DMV requirements for reinstatement prior to receiving his driver's license in 2010. Davis noted he did not receive any tickets for driving offenses between his third DUS ticket in 2005 and when the DMV issued him a driver's license in 2010. Davis contended if the DMV had notified him of his habitual offender status in 2006, he could have served at least two years of the required suspension during the time in which he did not have a driver's license. Davis indicated he sought a

1. S.C. Code Ann. § 56-1-1020 (Supp. 2016) (stating a person convicted of DUS three or more times within a three-year period is a habitual offender). Upon classifying a person as a habitual offender, the DMV must suspend his driver's license for five years. S.C. Code Ann. § 56-1-1090 (Supp. 2016).

rescission of his habitual offender status and reinstatement of his driving privileges.

On February 13, 2015, the hearing officer filed a final order and decision sustaining the suspension of Davis's license. The hearing officer asserted the circumstances of the delay in suspending Davis's license were similar to *State v. Chavis*,[2] in which our supreme court held a one-year delay in suspending a driver's license did not violate due process when the DMV was not at fault for the delay and no evidence of potential prejudice existed. *See* 261 S.C. at 411, 200 S.E.2d at 391. Further, the hearing officer found Davis did not attempt to take any action to serve his license suspension earlier.

Davis appealed the hearing officer's final order and decision to the ALC. On July 16, 2015, the ALC issued a final order and reversed the hearing officer's order sustaining the suspension of Davis's license. The ALC found Davis would suffer prejudice if the DMV suspended his license because he paid all reinstatement fees and completed all requirements to regain his license in 2010, prior to receiving notice his license would be suspended. The ALC noted the delay between Davis's third DUS conviction and the day his license would be suspended exceeded the total time his license would have been suspended if it were timely imposed. The ALC explained upholding the suspension of Davis's license "would place a non-existent affirmative burden upon [Davis] and any other licensee to shepherd through the suspension of his driver's license." Accordingly, the ALC found the hearing officer's conclusions of law were affected by an error of law, were clearly erroneous, and violated Davis's constitutional rights. This appeal followed.

## STANDARD OF REVIEW

The OMVH has exclusive jurisdiction over contested cases involving habitual offenders. S.C. Code Ann. § 56-1-1030(B) (Supp. 2016). Decisions by the OMVH hearing officer must be appealed to the ALC. S.C. Code Ann. § 1-23-660 (Supp. 2016). The Administrative Procedures Act (APA)[3] governs appellate review of ALC decisions. S.C. Code Ann. § 1-23-610(A) (Supp. 2016). The APA provides:

---

**2.** 261 S.C. 408, 200 S.E.2d 390 (1973).

**3.** S.C. Code Ann. §§ 1-23-310 through -400 (2005 & Supp. 2016).

The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2016). Accordingly, the ALC's decision "should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). "Substantial evidence, when considering the record as a whole, would allow reasonable minds to reach the same conclusion as the [ALC] and is more than a mere scintilla of evidence." *Id.* at 605, 670 S.E.2d at 676.

**ISSUES ON APPEAL**

I. Did Davis's three convictions for DUS support the DMV's declaration that Davis was a habitual offender?

II. Did the DMV's delay in declaring Davis a habitual offender violate his due process rights?

**LAW/ANALYSIS**

**I. Habitual Offender**

■ The DMV first argues the hearing officer properly found Davis was a habitual offender.

■ "Only a party aggrieved by an order, judgment, sentence[,] or decision may appeal." Rule 201(b), SCACR. If a party prevails on an issue below, the party is not an aggrieved party with respect to those rulings, and thus, the party may not appeal those issues. *See Ritter & Assocs., Inc. v. Buchan-*

*an Volkswagen, Inc.*, 405 S.C. 643, 655, 748 S.E.2d 801, 807 (Ct. App. 2013).

We decline to address this issue because the ALC ruled in the DMV's favor on this issue. The ALC explained "the record contain[ed] unrefuted evidence that within a three year period, [Davis] was convicted of three distinct offenses ... pursuant to [the habitual offender statute]" and found the DMV met its burden of proving Davis was a habitual offender. Therefore, we decline to address this issue because the DMV is not an aggrieved party entitled to appeal it.

## II. Denial of Fundamental Fairness

██ The DMV next argues Davis failed to show he was deprived of his due process rights or suffered prejudice from the delay in suspending his license. We disagree.

██ "A person's interest in his driver's license is property that a state may not take away without satisfying the requirements of due process. Due process is violated when a party is denied fundamental fairness." *Hipp v. S.C. Dep't of Motor Vehicles*, 381 S.C. 323, 325, 673 S.E.2d 416, 417 (2009) (citation omitted).

Our courts have addressed the delay between a conviction and a suspension and whether the lapse in notification violates an individual's due process rights on three prior occasions. In *Chavis*, our supreme court held a suspension did not violate due process when the State was not at fault for a one-year delay between Chavis's conviction for driving under the influence (DUI) and the suspension of his driver's license by the highway department immediately upon learning of the conviction. 261 S.C. at 409–11, 200 S.E.2d at 390–91. Specifically, the court noted the record contained no inference or indication that Chavis suffered any prejudice as a result of the one-year delay. *Id.* at 411, 200 S.E.2d at 391. Additionally, the court found Chavis did not seek to have his suspension "promptly ordered so that he could get [the suspensions] behind him[,]" but rather, "he simply kept quiet and continued to drive in the hope that his license suspensions would somehow ... get overlooked and never be imposed." *Id.* Accordingly, the court held a driver is not entitled to relief from the imposition of a suspension when an unexplained delay on the part of reporting

officials is unaccompanied by a showing of real prejudice to the driver. *Id.* at 412, 200 S.E.2d at 392. The supreme court, however, acknowledged "there might be circumstances under which it could be successfully argued or soundly held that the State had no right to suspend a driver's license after a long delay." *Id.* at 411, 200 S.E.2d at 391.

Subsequently, in *Hipp*, our supreme court held a twelve-year delay between a DUI conviction and the imposition of a suspension, when neither the driver nor the DMV were at fault for the delay, fell into one of the circumstances envisioned in *Chavis*. *Hipp*, 381 S.C. at 326, 673 S.E.2d at 417. Hipp was convicted of DUI in Georgia in 1993, but the South Carolina DMV did not receive notice of the Georgia conviction until 2005, and upon receipt, notified Hipp his driver's license would be suspended. *Id.* at 324, 673 S.E.2d at 416. The court noted neither the South Carolina DMV nor Hipp was at fault for the delay, but instead, recognized that the State of Georgia, alone, was responsible. *Id.* at 325 n.2, 673 S.E.2d at 417 n.2. Nevertheless, the court found the imposition of a suspension after a more than twelve-year delay, when Hipp was without fault for the delay, was "manifestly a denial of fundamental fairness." *Id.* at 325, 673 S.E.2d at 417.

This court recently addressed the DMV's suspension of a driver's license after a long delay in *Wilson v. South Carolina Department of Motor Vehicles*, 419 S.C. 203, 796 S.E.2d 541 (Ct. App. 2017). In that case, Wilson pleaded guilty to driving under the influence on June 11, 2009, and contacted the DMV to obtain a restricted driver's license in August 2009. *Id.* at 205, 796 S.E.2d at 541–42. However, the DMV informed her no DUI conviction appeared on her driving record. *Id.* at 205, 796 S.E.2d at 542. The DMV received her DUI ticket on May 20, 2014, and notified Wilson on May 27, 2014, that her license would be suspended. *Id.* at 205–06, 796 S.E.2d at 542. In its analysis, this court explained the case fell under the circumstances "envisioned by our supreme court in *Chavis*" when the State did not have the right to suspend a driver's license after a lengthy delay. *Id.* at 208, 796 S.E.2d at 543 (citing *Chavis*, 261 S.C. at 411, 200 S.E.2d at 391). As in *Chavis*, Wilson argued she would have served her license suspension earlier had she known about the impending suspension. *Id.* at 58. However, the court explained the case differed from *Chavis*

because Wilson demonstrated a "high likelihood of injury or potential prejudice" if the DMV suspended her license, including potential loss of employment and the inability to pay two mortgages. *Id.* Accordingly, the court held suspending a driver's license after a five-year delay "denie[d] ... fundamental fairness in violation of due process when sufficient evidence of prejudice exist[ed] in the record" and neither the DMV nor the driver were at fault for the delay. *Id.* at 209, 796 S.E.2d at 544.

In the instant case, the DMV contends no unreasonable delay occurred because it notified Davis of the suspension within twenty-seven working days of receiving notice of his third DUS conviction. Further, the DMV asserts Davis was not prejudiced by the delay because Davis's license was suspended for one and a half years for his DUS conviction and he voluntarily chose not to reinstate his license until 2010.

Upon our review, substantial evidence exists in the record to support the ALC's finding the six-year delay between Davis's third DUS conviction and the suspension of his license was fundamentally unfair. Although it is undisputed Davis was properly classified as a habitual offender for receiving three DUS convictions within a three-year period, the circumstances of this case fall under those envisioned in *Chavis* in which the DMV's right to suspend a driver's license is precluded because of a lengthy delay. *See* 261 S.C. at 411, 200 S.E.2d at 391 ("[T]here might be circumstances under which it could be successfully argued or soundly held that the State had no right to suspend a driver's license after a long delay[. . . .]"). As in *Wilson*, evidence exists to support a finding Davis would suffer prejudice if his license were suspended, and neither he nor the DMV were at fault for the delay. *See Wilson*, 419 S.C. at 207–08, 796 S.E.2d at 543.

First, Davis would suffer prejudice and injury if his license was now suspended because when he received notice of the suspension, he had already paid reinstatement fees, met the DMV's requirements for reinstatement, and his license had been reinstated for twenty months. Furthermore, the six-year delay exceeds the total time that Davis's suspension would have run if it had been timely imposed. *See* S.C. Code Ann.

§ 56-1-1090 (Supp. 2016) (providing the DMV must suspend a habitual offender's driver's license for five years).

Second, neither the DMV nor Davis was at fault for the delay. Although the DMV contends fundamental fairness would not be denied by suspending Davis's license because it was not at fault for the delay, South Carolina appellate courts have enjoined the DMV from suspending a driver's license after a lengthy delay even though the DMV was not responsible for the delay. *See Wilson*, 419 S.C. at 207–08, 796 S.E.2d at 543 (holding a five-year delay in suspending a driver's license violated due process when sufficient evidence of potential prejudice existed and neither party was at fault for the delay); *Hipp*, 381 S.C. at 325, 673 S.E.2d at 417 (holding the suspension of a license after a twelve-year delay when neither the driver nor the DMV was responsible for the delay was "manifestly a denial of fundamental fairness").

■ Last, to the extent the DMV argues Davis acted with unclean hands, we find the argument is not preserved for appellate review because the DMV failed to raise it to the ALC. *See Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [lower] court to be preserved."); *Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to and ruled on by the AL[C] are not preserved for appellate consideration.").

## CONCLUSION

In conclusion, substantial evidence supports the ALC's finding the six-year delay between Davis's third DUS conviction and his license suspension violated his due process rights. Accordingly, the ALC's order reinstating Davis's driver's license is

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.