730 S.E.2d 357

Sheran PROCTOR, Respondent,

v.

Ola Mae STEEDLEY, Appellant.

Appellate Case No.2010–172286.

No. 4999.

Court of Appeals of South Carolina.

Heard April 12, 2012.

Decided July 11, 2012.

562

Sonja Renee Tate, of Fulcher Hagler LLP, of Augusta, Georgia, for Appellant.

Thomas P. Murphy, of North Augusta, for Respondent.

GEATHERS, J.

In this declaratory judgment action, Ola Mae Steedley appeals the special referee's order, which concluded that her predecessor in title, Claude Smith, granted an appurtenant easement across her property to the prior owner of an adjoining parcel. We affirm.

## FACTS/PROCEDURAL HISTORY

Appellant Ola Mae Steedley is the owner of a parcel of land located on Sweetwater Road in Edgefield County, South Carolina.[1] To the west of Steedley's parcel is an adjoining parcel owned by Respondent Sheran Proctor (Parcel 1). To the southwest of this adjoining parcel is a smaller parcel also

---

1. Sweetwater Road was previously named Five Notch Road. Throughout the record, witnesses and the special referee refer to the road by both names.

owned by Proctor (Parcel 2). Proctor's two parcels, which are located on an unpaved road, Country Manor Lane, and Steedley's parcel originated from a common grantor, Claude Smith.[2] Hereinafter, Parcel 1 and Parcel 2 will be referenced together as one tract (Proctor's property).

The dispute in this case arises over the nature of an easement granted in 1973 by Smith to Proctor's parents and predecessors in title, Karl and Mary Louise Burger. The easement allowed the Burgers to access the northern part of their property from Sweetwater Road by use of an unpaved road crossing Smith's adjoining parcel to the east, which is now owned by Steedley. Smith and the owner of neighboring property to the north, Emerson Odom, had created this access road for their own use a few years before Smith granted the easement allowing the Burgers to use the road as well. In 1981, after Smith died, his widow conveyed the parcel abutting Sweetwater Road to David Steedley.

Proctor's property lies directly north of Country Manor Lane, which forks off from Randall Road; thus, Proctor can access the southern part of her property from Country Manor Lane. However, a creek bisects Proctor's property;[3] hence, she cannot access the part of her property to the north of the creek from Country Manor Lane. While it is possible to access the northern part of Proctor's property from the unpaved access road that crosses Steedley's property, Steedley erected a locked gate preventing Proctor from using the access road. Therefore, Proctor brought this action seeking a judgment declaring that the right to use this access road, granted by Smith to her parents in 1973, was transferrable to her, i.e., an appurtenant easement.

---

**2.** Smith conveyed the parcels on Country Manor Lane to Proctor's parents, Karl and Mary Louise Burger, in 1973. In 1979, after Smith's death, his widow and sole devisee executed a "correction deed" that corrected the description of the south and southwest boundaries of Parcel 1 and Parcel 2. In 1981, Smith's widow conveyed the parcel on Sweetwater Road to David Steedley. Ola Mae Steedley is David Steedley's widow. After the 1980 death of Proctor's father, Proctor's mother conveyed Parcel 1 to Proctor in 1994. In 2001, Proctor's mother conveyed Parcel 2 to Proctor.

**3.** According to testimony, the creek runs *from* a pond on Steedley's property.

The following language appears in the 1973 deed from Smith to the Burgers:

> It is understood and agreed by and between the Grantor and the Grantees that an access road shall be maintained between the property of Temples and the Smith property which leads from the Five Notch Road to the lands herein conveyed and an access road from the Five Notch Road on the South and Southwestern part of the said property hereinabove conveyed.[4]

The first access road described in the deed relates to the easement at issue.[5] Although the deed states that this access road "leads from" Five Notch (now Sweetwater) Road, it is actually separated from Sweetwater Road by an area described by Steedley's son as approximately forty to fifty feet long and "ditch-like." Thus, anyone desiring to drive a vehicle on this access road must cross a parcel to the north of the access road to get to and from Sweetwater Road.

The access road runs along the property line between the Steedley (formerly Smith) parcel and the Odom parcel, then it reaches a fork; to the left (south), it runs to a pond on the Smith property, and to the right, it runs onto the northern part of Proctor's property and terminates at a cul-de-sac. Depending on the precise location, the width of the access road is between eight and twenty feet; it is wide enough for a truck or a tractor to traverse.

Proctor and her family have used their property for activities such as picnicking and gathering firewood. They cut a path from the southernmost part of the property to the creek. Proctor's mother and step-father put a trailer on the southern part of the property abutting Country Manor Lane. Additionally, Proctor's mother had timber cut from the property on at least one occasion. The timber company did not use the access road to the northern part of the property. Instead, the loggers pushed the timber across the creek by building a

---

4. The Temples' property was later purchased by Emerson Odom, a portion of which he deeded to his daughter, who subsequently deeded this portion to her daughter.

5. The second access road referenced in the deed is Country Manor Lane.

temporary bridge and took all the timber to the southern part of the property and out via Country Manor Lane.

After Steedley's husband passed away, her family became concerned about trespassers using the access road to get to the pond on her property. Consequently, the family installed an unlocked chain across the road. They later replaced the chain with a gate, which initially remained unlocked. Once the gate was locked, Steedley's family offered keys to neighbors who might use the access road. However, the family did not offer a key to Proctor.

Several months after the chain and then the gate were installed, Proctor contacted Steedley, requesting use of the access road and indicating that she was going to send her a copy of the deeds creating the easement.[6] Proctor called Steedley a second time to determine if she had received the copies of the deeds. Steedley indicated she had received them and "had turned it over to her son." Steedley's son later telephoned Proctor and told her not to call his mother again.

On December 17, 2008, Proctor filed an action seeking: (1) a declaratory judgment establishing (a) the grant of an appurtenant easement; and (b) the easement's width; (2) injunctive relief prohibiting Steedley from denying Proctor the use of the easement; and (3) economic damages. The complaint cited the language in the deed between their respective predecessors-in-interest. Steedley asserted that any grant of a right to use the access road was an easement in gross that was personal to the original contracting parties.

A special referee conducted a hearing on July 21, 2010. At that time, Proctor abandoned her claim for damages and pursued only her claims for equitable relief. Immediately prior to the hearing before the special referee, Steedley moved to exclude the testimony of Proctor's expert witness, Keith Taylor, an attorney who had practiced in the area of real property law for over twenty-seven years. Taylor performs his own title examinations and writes title insurance. Steedley objected to the admission of Taylor's testimony on the ground that it would be improper for an attorney to give an expert opinion as to what would be the "ultimate question of

---

6. The original deed from Smith to the Burgers was executed in 1973. In 1979, Smith's widow executed a "correction deed."

law" in the case, i.e., whether the easement in question was an easement in gross or an appurtenant easement. The special referee ruled that he would allow Taylor's testimony. Steedley noted a continuing objection to Taylor's testimony.

Taylor testified that whether the easement was appurtenant or in gross depended on the intent of the parties at the time the deed was executed. He gave his opinion as to the plain meaning of the phrase "access road" as used in the deed:

> An access road just means ... a road to access your property. It would mean a right to transfer the access of that road. I mean, I think a plain meaning of an access road is a way to access the property. You don't buy landlocked property thinking, well, I'll never be able to transfer or sell this property because I don't have access to it. So, an access road would mean, I think, an easement in perpetuity and appurtenant to the property.

Taylor also gave his opinion as to the nature of the easement in the present case: "[T]he access road granted is an easement appurtenant to the property, because the plain meaning of an access road is a way of accessing your property, and would be one that could be conveyed to subsequent purchasers."

The special referee issued a written order concluding that the easement created by the language of the deed from Smith to the Burgers established an appurtenant easement for pedestrian and vehicular traffic. The special referee also ruled "henceforth the easement shall be twenty (20) feet in width throughout its current path across [Steedley's] property."

The order further required steps to be taken to continue the access road from its current termination point on Steedley's property to Sweetwater Road so that users of the road will not have to cross the neighboring property to the north. Finally, the order stated "nothing contained in this Order shall be interpreted as allowing [Proctor] the right to materially increase the volume of traffic over the access road beyond her personal use and that of members of her family and invitees." This appeal followed.

## ISSUES ON APPEAL

1. Did the special referee err in concluding that the easement across Steedley's property was an appurtenant easement?

2. Did the special referee improperly expand the scope of the easement?

3. May this court affirm the special referee's order on the ground that Proctor has an easement by necessity?

4. Did the special referee err in admitting an attorney's testimony as to the issue of the grantor's intent as expressed in the deed?

## STANDARD OF REVIEW

The distinction between an appurtenant easement and an easement in gross involves the extent of a grant of an easement, as opposed to the creation of an easement. *See Windham v. Riddle*, 370 S.C. 415, 418, 635 S.E.2d 558, 559 (Ct.App.2006) (characterizing the determination of whether an easement was appurtenant or in gross as a determination of the extent of a grant of an easement), *aff'd*, 381 S.C. 192, 672 S.E.2d 578 (2009).[7] The determination of the extent of a grant of an easement is an action in equity. *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997). Therefore, on appeal of such a determination, this court may take its own view of the preponderance of the evidence. *Id.* "However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the trial judge is in the better position to assess the credibility of the witnesses." *Pinckney v. Warren*, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001) (citations omitted). "Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial judge committed error in his findings." *Id.* at 387–88, 544 S.E.2d at 623.

---

7. Further, the interpretation of a deed is an equitable matter. *Heritage Fed. Sav. & Loan v. Eagle Lake & Golf Condos.*, 318 S.C. 535, 539, 458 S.E.2d 561, 564 (Ct.App.1995).

### LAW/ANALYSIS

## I. Appurtenant Easement

 Steedley first argues the special referee erred in concluding that the easement in question was appurtenant because Proctor failed to show either the grantor's intent to convey an appurtenant easement or the necessity of the easement. We will address these arguments in turn.

> An easement is a right which one person has to use the land of another for a specific purpose, and gives no title to the land on which the servitude is imposed. An easement is therefore not an estate in lands in the usual sense. An easement may be created by reservation in a deed.

*Windham,* 381 S.C. at 201, 672 S.E.2d at 582 (citations and quotation marks omitted).

> The character of an express easement is determined by the nature of the right and *the intention of the parties creating it.* An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer. In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is *essentially necessary to the enjoyment thereof.* It also passes with the dominant estate upon conveyance. *Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross.* Where language in a plat reflecting an easement is capable of more than one construction, that construction which least restricts the property will be adopted.

*Id.* at 201–02, 672 S.E.2d at 583 (quoting *Tupper,* 326 S.C. at 325–26, 487 S.E.2d at 191) (emphases added) (citations omitted). Here, the only two elements in dispute are intent and necessity.

### A. Grantor's Intent

 Because the language creating the easement is found in the deed from Smith to the Burgers and in the subsequent corrective deed, both parties acknowledge the application of case law governing the interpretation of deeds in support of their respective positions. *See K & A Acquisition Grp., LLC v. Island Pointe, LLC,* 383 S.C. 563, 581, 682

S.E.2d 252, 262 (2009) (holding that the grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments).

In construing a deed, the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy. In determining the grantor's intent, *the deed must be construed as a whole and effect given to every part if it can be done consistently with the law.* The intention of the grantor must be found within the four corners of the deed.

*Windham,* 381 S.C. at 201, 672 S.E.2d at 582–83 (emphasis added) (citations and quotation marks omitted).

The determination of the grantor's intent when reviewing a clear and unambiguous deed is a question of law for the court. *Hunt v. Forestry Comm'n,* 358 S.C. 564, 568, 595 S.E.2d 846, 848 (Ct.App.2004). This court reviews questions of law de novo. *Fields v. J. Haynes Waters Builders, Inc.,* 376 S.C. 545, 564, 658 S.E.2d 80, 90 (2008). In other words, a reviewing court is free to decide questions of law with no particular deference to the trial court.[8] *Hunt,* 358 S.C. at 569, 595 S.E.2d at 848–49.

Here, the language in Smith's deed describing the access road in issue is as follows:

It is understood and agreed by and between the Grantor and the Grantees that the access road shall be maintained between the property of the Temples and the Smith property which leads from the Five Notch Road to the lands

---

8. Likewise, the determination of whether language in a deed is ambiguous is a question of law. *Cf. S.C. Dep't of Natural Res. v. Town of McClellanville,* 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001) (applying rules of contract construction to a restrictive covenant in a deed and stating that whether a contract is ambiguous is a question of law for the court). The language in a deed is ambiguous if it is reasonably susceptible to more than one interpretation. *Id.* at 623, 550 S.E.2d at 302 (stating that a contract is ambiguous when its terms are reasonably susceptible to more than one interpretation). We conclude there is no ambiguity in the language of Smith's deed creating the easement at issue in this case. Therefore, it was unnecessary for the special referee to evaluate evidence outside the deed's four corners on the issue of Smith's intent. *Id.* at 623, 550 S.E.2d at 303 (stating that once the court decides the language of the instrument is ambiguous, evidence may be admitted to show the parties' intent, the determination of which is then a question of fact).

herein conveyed and an access road from the Five Notch Road on the South and Southwestern part of the said property hereinabove conveyed.

When viewing the clear and unambiguous language of the deed as a whole, the grant of an "access road" describes a way to access the property that all current and future owners of the property may enjoy. In support of her argument that Smith intended to grant an appurtenant easement, Proctor highlights the deed's words of inheritance, i.e., "their heirs and assigns forever," which both precede and follow the description of the property with the accompanying easement language. Proctor also highlights the phrase, "[t]ogether with all and singular, the rights, members, hereditaments and appurtenances to the said premises belonging or in anywise incident or appertaining[,]" which follows the property description and easement language.

Generally, the phrase "heirs and assigns" will not convert an easement in gross to an appurtenant easement when the elements of an appurtenant easement are not otherwise present. *Douglas v. Medi. Investors, Inc.,* 256 S.C. 440, 447–48, 182 S.E.2d 720, 723 (1971); *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 423, 143 S.E.2d 803, 808 (1965); *Ballington v. Paxton,* 327 S.C. 372, 381, 488 S.E.2d 882, 887 (Ct.App.1997). However, such language is relevant to the determination of the grantor's intent. *Douglas,* 256 S.C. at 448, 182 S.E.2d at 724; *Sandy Island,* 246 S.C. at 423, 143 S.E.2d at 808; *see also Smith v. Comm'rs of Pub. Works of City of Charleston,* 312 S.C. 460, 468, 441 S.E.2d 331, 336 (Ct.App.1994) (stating that the phrase "all and singular, the rights, members, hereditament and appurtenances to the said premises belonging, or in anywise incident or appertaining[,]" which followed a deed's property description, showed an intent to grant all rights essential to the enjoyment of the premises conveyed).

In conclusion, the phrases highlighted by Proctor, combined with the easement language, show Smith's intent that the easement run with the land. Notably, nothing in the deed suggests the grantor intended the easement to be merely personal to the Burgers. Based on the foregoing, the deed as a whole shows the grantor's intent to convey an appurtenant easement.

## B. Necessity

Steedley asserts that the access road is not necessary to the enjoyment of Proctor's property. We disagree.

The record shows that Proctor's property is bisected by a creek emanating from the pond on Steedley's property. On either side of the creek is a ravine preventing vehicular access to the north side of the property, absent use of the access road through Steedley's property. Tom Proctor described the creek and ravine as follows:

> [W]here it comes out of the pond, it's kind of flat and swampy up in there for a good ways, and then it gets pretty deep. It's deep pretty much all the way down until it exits our property ... The ditch is ... six or seven feet deep and probably seven or eight feet wide.

This evidence supports the special referee's conclusion that the access road was necessary for the enjoyment of the dominant estate.

Steedley contends Tom Proctor essentially admitted that the access road was not necessary when he testified that a bridge could be built over the creek. We disagree with the contention that this testimony is equivalent to an admission that the access road is unnecessary. Tom Proctor did not testify that such an option was reasonable or affordable. Further, Steedley has not pointed to any evidence in the record showing that the option of building a bridge to support heavy-duty vehicles is reasonable or affordable. Therefore, she has failed to carry her burden of convincing this court that the special referee erred in finding the access road necessary to Proctor's enjoyment of her property. *See Lewis v. Lewis,* 392 S.C. 381, 385, 709 S.E.2d 650, 652 (2011) (holding that the burden is upon the appellant to convince this court that the trial court erred in its findings).

## II. Burden on the Servient Estate

As stated previously, the special referee required the access road to be maintained at "twenty (20) feet in width throughout its current path across [Steedley's] property." The special referee further required steps to be taken to continue the access road from its current termination point on Steedley's property to Sweetwater Road, so that users of the

access road will not have to cross the neighboring property to the north to avoid the ditch-like area separating the access road from Sweetwater Road. Steedley maintains that these rulings unreasonably burden her property. We disagree.

In determining the proper scope of an easement, this court's opinion in *Smith v. Commissioners of Public Works of City of Charleston* is instructive. 312 S.C. 460, 441 S.E.2d 331 (Ct. App.1994). In *Smith*, this court interpreted the language of an easement agreement negotiated between the plaintiffs' predecessor in interest, Benjamin Kittredge, and the defendants' predecessor in interest, Bushy Park Authority.[9] 312 S.C. at 462, 441 S.E.2d at 333. The easement agreement stated:

"Kittredge and all future owners of Dean Hall Plantation and Cypress Gardens shall have the right, and the same is hereby granted to them, of ingress, egress and regress to the banks of and across the canal about to be constructed, leading from the Cooper River to Back River, *at any point* contiguous to the lands being conveyed by Kittredge to the Authority."

*Id.* at 463, 441 S.E.2d at 333 (emphasis added).

The court concluded it was unreasonable to interpret the agreement to mean Kittredge and Bushy Park intended that each owner of any portion of the Plantation, "no matter how small his portion, would have his own private unlimited access to the canal as long as his land was contiguous to [the defendant's] land." *Id.* at 468–69, 441 S.E.2d at 337. In reaching this conclusion, the court reasoned as follows:

The subject unlocated easement must be interpreted, however, in light of good faith, reasonableness and what was necessarily the intent of the parties to the 1955 agreement. *Hill v. Carolina Power & Light Co.*, 204 S.C. 83, 28 S.E.2d 545 (194[3] ) (an easement in general terms is limited to a use which is *reasonably necessary* and convenient and *as little burdensome to the servient estate as possible for the use contemplated)*. In determining the extent of the easement (number of access points or routes), *consideration*

9. Kittredge had agreed to sell land to Bushy Park Authority so that the Authority could construct a canal from the Cooper River to the Back River. 312 S.C. at 463, 441 S.E.2d at 333.

*must be given to what is essentially necessary to the enjoyment of the [plaintiffs'] property.*

*Smith,* 312 S.C. at 468, 441 S.E.2d at 336 (emphases added).

Here, the evidence shows that without extending the access road from Steedley's gate to the roadway of Sweetwater Road, a vehicle would have to either drive through a "ditch-like area" or travel over the adjacent property to the north of Steedley's property. The special referee believed that extending the length of the access road was the most reasonable implementation of the easement Smith intended to grant to the Burgers and their successors in title. We agree with the special referee's assessment. Moreover, the special referee required Proctor to bear the cost of making this short extension.

As to the width requirement, Steedley's own witness, Emerson Odom, testified that the access road would not accommodate log trucks. Further, Steedley has failed to specify precisely how the extra width in those places not already twenty-feet-wide would burden her property other than requiring the removal of some "established" trees. Moreover, Steedley has not pointed to any evidence in the record showing that these trees are unique or have any special significance that would render their removal unreasonable. Therefore, she has failed to carry her burden of convincing this court that the challenged requirements impose an unreasonable burden on her property. *See Pinckney,* 344 S.C. at 387–88, 544 S.E.2d at 623 (recognizing the appellant has the burden of convincing the appellate court that the trial judge erred).

Based on the foregoing, we hold the challenged requirements fall within the original intent of Smith's grant of access to the Burgers and do not impose an unreasonable burden on Steedley's property.

## III. Easement by Necessity

Proctor argues that pursuant to Rule 220(c), SCACR,[10] this court may affirm the special referee's order on the ground that Proctor has an easement by necessity. We agree.

10. Rule 220(c), SCACR, provides that this court may affirm an order upon any ground appearing in the Record on Appeal.

 The elements of a claim for easement by necessity are: (1) unity of title, (2) severance of title, and (3) necessity. *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 418–19, 633 S.E.2d 136, 140–41 (2006). "The necessity required for easement by necessity must be actual, real, and reasonable as distinguished from convenient, but need not be absolute and irresistible." *Id.* at 420, 633 S.E.2d at 141. "The necessity element of easement by necessity must exist at the time of the severance and the party claiming the right to an easement must not create the necessity when it would not otherwise exist." *Id.* (citations omitted).

 "To establish unity of title, the owner of the dominant estate must show that his land and that of the owner of the servient estate once belonged to the same person." *Kennedy v. Bedenbaugh*, 352 S.C. 56, 60, 572 S.E.2d 452, 454 (2002). Severance of title means that title to a larger tract was severed "by conveyance of a part to the predecessor in title of the plaintiff and of a part to the predecessor in title to the defendant; they both claim, from a common source, different parts of the integral tract, which necessarily assumes a severance." *Brasington v. Williams*, 143 S.C. 223, 246, 141 S.E. 375, 382 (1927). In the present case, no party disputes that the elements of unity of title and severance of title are present, and these elements clearly appear in the record.

 Steedley argues that because Proctor did not assert the claim of easement by necessity before the special referee, she did not preserve the claim for appellate review. However, "it is not always necessary for a *respondent*—as the winning party in the lower court—to present his issues and arguments to the lower court and obtain a ruling on them in order to preserve an issue for appellate review." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000). "[W]hen the lower court rules in one party's favor, it is not necessary for that party to return to the court and ask for a ruling on remaining issues and arguments in order to preserve those arguments for use in an appeal." *Id.* at 423, 526 S.E.2d at 725.

Here, although Proctor did not include the claim of "easement by necessity" in her complaint, she presented evidence on all of the elements of this claim as this evidence was

relevant to her claim for an appurtenant easement.[11] Therefore, the grounds for establishing an easement by necessity appear in the record and allow this court to affirm the special referee's order.

## IV. Expert Testimony

Steedley maintains that the special referee erred in admitting attorney Keith Taylor's expert testimony as to the issue of the grantor's intent.[12] Assuming arguendo that this testimony was improper, its admission into evidence was harmless because the deed itself supports the special referee's finding that Smith intended to grant an appurtenant easement. *See Judy v. Judy*, 384 S.C. 634, 646, 682 S.E.2d 836, 842 (Ct.App.2009) (holding that appellate courts will not set aside judgments due to insubstantial errors not affecting the result).

## CONCLUSION

Accordingly, the special referee's order is

**AFFIRMED.**

PIEPER and KONDUROS, JJ., concur.

---

**11.** Proctor argues that a second ground for necessity existed at the time of Smith's conveyance to the Burgers, i.e., Smith had already conveyed his interest in the other access road, now known as Country Manor Lane, to a third party. However, this ground for necessity was later extinguished when the parties' rights to use the road were clarified. *See Boyd*, 369 S.C. at 420, 633 S.E.2d at 141 (holding that an easement by necessity will be extinguished once the necessity ends).

**12.** Taylor also testified regarding the objective results of his title examination. This particular testimony is not in dispute.