LOCKEMY, C.J.:
**365 In this appeal from the Charleston County Master-in-Equity, Appellants assert the master erred in granting the Town of Sullivan's Island's (Town's) motion for summary judgment on numerous claims regarding the Town's decision not to cut a maritime forest on the island. We affirm.
FACTS
Appellants in this case own front row property on Sullivan's Island. However, Appellants do not own the property closest to the beach-rather, the Town owns those lots, which continue to grow each year, through a process known as sediment transport. See Josh Eagle, Coastal Law 6 (2011). Professor Eagle explains, "sand grains do not magically vanish from or appear on a beach; rather they are going to, or coming from somewhere else along the coast." Id . While most land use cases along our coast involve erosion, or the loss of beachfront sediment, this case involves accretion, or the addition of sediment to the beach front.
The question here is whether the Town must maintain the land exactly as it was in 1991, including cutting any vegetation to a height of three feet, as Appellants assert. The land owned by the Town is subject to certain restrictions resulting from a deed conveying the land to the Town from the Low Country Open Land Trust (the Trust). In order to protect the Town's ocean adjacent property from development, the Town's council enacted an ordinance on January 15, 1991, which authorized the Town to convey the land between the ocean and the front row properties to the Trust. The Trust subsequently conveyed the land back to the Town on February 12, 1991.
*241 **366 The conveyance from the Trust included the deed restrictions at issue here. The deed explained the purposes behind the conveyance.
Whereas the Lowcountry Open Land Trust (the "Grantor") is a nonprofit corporation whose purpose is to preserve and conserve natural areas; and
WHEREAS, the Grantor is the owner in fee simple of certain real property (hereinafter referred to as the "Property") which has aesthetic, scientific, educational, and ecological value in its present state as a natural area which has not been subject to development or exploitation, which property is described more on the attached Exhibit A;
WHEREAS, the parties desire to place restrictions upon the Property for the purposes of, inter alia , retaining land or water areas predominantly in their natural, scenic, open or wooded condition or as suitable habitat for fish, plants, or wildlife; and
WHEREAS, "natural, scientific, educational, aesthetic, scenic and recreational resource," as used herein shall, without limiting the generality of the terms, mean the condition of the Property at the time of this grant, evidenced by:
A) The appropriate survey maps from the United States Geological survey, showing the property line and other contiguous or nearby protected areas;
B) An aerial photograph of the Property at an appropriate scale taken as close as possible to the date hereof; and
C) On-site photographs taken at appropriate locations on the property ....
To further those purposes, the deed provided certain restrictions. Specifically,
1. Except as otherwise provided or permitted in Paragraphs 2 and 3 hereof, the Property shall remain in its natural state, no changes shall be made to its topography or vegetation and no structures or improvements shall be erected on the Property.
2. Notwithstanding the provisions of Paragraphs 1 and 3 and subject to the limitations of paragraph 4, the Town Council is given the unrestricted authority to trim and **367 control the growth of vegetation for the purposes of mosquito control, scenic enhancement, public and emergency access to the Atlantic Ocean and providing views of the ocean and beaches to its citizens. ...
6. During the term of these restrictions, the Town shall cause to remain in effect an ordinance of the Town making it a violation of the law for any person to violate the provisions of these Restrictions, as such Restrictions may be modified pursuant to Paragraph 8 hereof. The Town may enact ordinances and regulations affecting the Property which are more restrictive than these Restrictions or which are not inconsistent with these Restrictions.
The deed also gave all property owners the right to challenge any action on the property by the Town in violation of the agreement. The deed also provided the restrictions were self-renewing unless repealed by a 75% vote of the town's electorate.
When the deeds were executed in 1991, the Town had an ordinance, passed in 1981, restricting the use of the ocean adjacent property. The ordinance indicated
There shall be no construction of any type, no destruction of vegetation (except trimming, cutting and pruning of bushes and trees as provided in this section) and no man-made changes of topography in [the] area. The Town Council may establish a program pursuant to which citizens may apply to the Town for permission to prune, trim and cut bushes and trees in the ... area as follows ... (5) in those areas where the height of trees or bushes are deemed objectionable, the trees or bushes may be pruned to a height of no less than three (3) feet, provided that the cumulative effect of the trimming, cutting or pruning shall not be detrimental to the safety, welfare, and health of the people of the Town.
§ 21-39A. In 1995, that ordinance was amended. The 1995 Ordinance was, in most material ways, identical to the 1981 Ordinance. However, the 1995 Ordinance noted, "vegetation may be trimmed and pruned so *242 as to have a maximum height of no less than seven feet (7') above the ground." § 21-39.1G. Finally, the Town amended the ordinance again in 2005. The 2005 Ordinance indicated which plants could be trimmed and **368 pruned and noted "[t]his vegetation may be trimmed and pruned so as to have a maximum height of no less than five (5) feet above the ground." § 21-71(C)(3).
When the 1991 deeds were executed, the ocean adjacent land was covered in sea oats and wildflowers and the Appellants' homes had unobstructed ocean views and access to ocean breezes. Because of the Town's trimming and pruning ordinances, however, the vegetation on the ocean adjacent land has grown into a maritime forest.
In the summer of 2010, Appellants applied to the Town for a permit to trim and prune the ocean adjacent property, as allowed by the deed. Appellants wished to cut the vegetation to a height of no less than three feet, as indicated in the 1981 Ordinance. The Town denied the permit.
Appellants then filed this action. In their complaint against the Town, Appellants asserted claims for breach of contract, breach of contract accompanied by a fraudulent act, a violation of the South Carolina Unfair Trade Practices Act (SCUTPA)[1] , nuisance, and inverse condemnation.[2] Appellants demanded injunctive relief, a writ of mandamus, a declaratory judgment, attorney's fees and costs, and compensatory damages. Appellants also requested the court invalidate the 1995 and 2005 Town ordinances.
According to the Appellants, the unchecked growth of vegetation on the ocean adjacent land has resulted in public and private harms. Appellants claim they and the public have been deprived of their ocean views and breezes. Furthermore, the overgrowth has allegedly caused other dangers and nuisances including fire hazards, mosquitos, raccoons, snakes, and coyotes. Appellants' also claim the value of their properties has been diminished by $1,000,000 because of the maritime forest.
After briefing and argument, the master granted the Town summary judgment in several orders throughout the litigation. First, the master granted the Town summary judgment as to the breach of contract accompanied by a fraudulent act claim. The master found the Town was immune from suit for breach **369 of contract accompanied by a fraudulent act because the Tort Claims Act provides a governmental entity cannot be sued for legislative action or inaction or for employee conduct outside the scope of his official duties.
Subsequently, the master granted summary judgment on Appellants' request for injunctive relief because the deed's language did not obligate the Town to only trim and prune bushes and trees in the ocean adjacent property to three feet. The master found "[t]he 1995 and 2005 Deed Restrictions allow less cutting than did the 1981 Ordinance. As such, these ordinances are 'more restrictive.' " The master also found the 1981 Ordinance did not provide Appellants a right to cut all vegetation, but rather any decision to allow pruning would issue, "[w]hen the Zoning Administrator finds as a fact that bushes and trees create a hazard to health, safety, and welfare of the Town in a particular area." Additionally, the master granted summary judgment on the inverse condemnation claim as no legal right had been taken.
On July 29, 2015, the master submitted an order containing more grounds for its decision. The master found Appellants failed to secure a cutting permit from the South Carolina Department of Health and Environmental Control (SCDHEC), and could not, therefore, prove any damages resulting from the Town's denial of their permit to trim vegetation on the ocean adjacent property.
Finally, the master issued an order purporting to grant the Town's motion for summary judgment on the nuisance, breach of contract, and mandamus causes of action. The master found the Town could not be held responsible for acts of nature which occurred after the Town stopped trimming the vegetation on the land. The master also noted "[Appellants'
*243 ] claims of a public nuisance cannot stand against the Town because their argument alleges a duly enacted law constitutes a nuisance." The master held these legislative acts cannot be the basis for a nuisance claim.[3] This appeal followed.
**370 STANDARD OF REVIEW
"The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder." Penza v. Pendleton Station , 404 S.C. 198, 203, 743 S.E.2d 850, 852 (Ct. App. 2013).
When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP ; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.
Id ."In determining whether a genuine issue of [material] fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party." Id . at 203, 743 S.E.2d at 852-53. "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." Id . at 203-04, 743 S.E.2d at 853 (quoting Sides v. Greenville Hosp. Sys. , 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004) ).
INTERPRETATION OF THE DEED
Appellants assert the master erred by granting the Town summary judgment on its various contract claims because the deed's language requires the Town to preserve the ocean adjacent property exactly as it existed in 1991. We disagree.
"[T]he interpretation of a deed is an equitable matter." Id . at 204, 743 S.E.2d at 853 (quoting Eldridge v. City of Greenwood , 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct. App. 1998) (alteration in original) ). "The construction of a clear and unambiguous deed is a question of law for the court." Id . (quoting Hunt v. Forestry Comm'n, 358 S.C. 564, 568, 595 S.E.2d 846, 848 (Ct. App. 2004) ). "[T]he determination of whether language in a deed is ambiguous is a question of law. The language in a deed is ambiguous if it is reasonably susceptible to more than one interpretation." Id . (quoting Proctor v. Steedley, 398 S.C. 561, 573 n. 8, 730 S.E.2d 357, 363 n. 8 (Ct. App. 2012) (alteration in original) ).
"One of the first canons of construction of a deed is that the intention of the grantor must be ascertained and **371 effectuated if no settled rule of law is contravened." Id . (quoting Bennett v. Investors Title Ins. Co. , 370 S.C. 578, 590, 635 S.E.2d 649, 655 (Ct. App. 2006) ). "[O]nce a contract or agreement is before the court for interpretation, the main concern of the court is to give effect to the intention of the parties." Id . (quoting Williams v. Teran, Inc., 266 S.C. 55, 59, 221 S.E.2d 526, 528 (1976) (alteration in original) ). "Moreover, in ascertaining [the grantor's] intention, the deed must be construed as a whole and effect given to every part thereof, if such can be done consistently with law." Id . (quoting Bennett, 370 S.C. at 590, 635 S.E.2d at 655 (alteration in original) ). "When a deed is unambiguous, any attempt to determine the grantor's intent when reserving the easement must be limited to the deed itself and using extrinsic evidence to contradict the plain language of the deed is improper." Id . Only "[w]hen the agreement is ambiguous the court may take into consideration the circumstances surrounding its execution in determining the intent." Id . at 205, 743 S.E.2d at 853 (quoting Williams, 266 S.C. at 59, 221 S.E.2d at 528 (alteration in original) ).
The deed indicates the parties intended for the land to stay in the "condition of the Property at the time of this grant" as shown in multiple photographs taken in 1991. But that language cannot be taken in isolation, and must be read with the remainder of the document. See *244 Bennett , 370 S.C. at 590, 635 S.E.2d at 655 (noting, to determine the intention of a grantor, "the deed must be construed as a whole and effect given to every part thereof, if such can be done consistently with [the] law"). The deed's language evidences an intent that the town maintain the land's natural character. Appellants' interpretation of the deed would require the town to continuously remove all vegetation from the beach that was not present in 1991 to preserve this character. We do not read the deed as requiring such drastic management.
The deed's initial language was "made subject to" the Town's "unrestricted authority to trim and control the growth of vegetation for the purposes of mosquito control, scenic enhancement, public and emergency access to the Atlanta Ocean and providing views of the ocean and beaches to its citizens" and the Town's ability to "enact ordinances and regulations affecting the Property which are more restrictive than these Restrictions or which are not inconsistent with **372 these restrictions." Appellants asserted during argument before this court these phrases mean the Town can only trim the vegetation lower than it was in 1991 to comply with the deed. It is illogical that an organization "whose purpose is to preserve and conserve natural areas" would transfer property to the Town and require more land management as a less restrictive regulation. Instead, the master found, and we agree, the Town's ordinances, which permit less trimming of vegetation on the accreted land, are more restrictive than those indicated in the deed, and were specifically contemplated by the deed's unambiguous language.
While the deed's language is unambiguous, it is noteworthy that both the Town and the grantor of the deed agree the Town's ordinances are appropriate under the language of the deed. Elizabeth Hagood, the executive director of the Lowcountry Open Land Trust stated in an affidavit the Trust "periodically and regularly visited the [ocean adjacent land] each year since 2001, reviewed the existing field conditions, compared the field conditions to the deed restrictions, and found nothing that violated the deed restrictions." Although that affidavit alone does not determine whether the Town's actions comply with the deed's plain language, it provides additional evidence that the only two parties to the contract agree the Town's ordinances are in keeping with the intentions of the parties in 1991.
Accordingly, based upon the plain language of the deed in its entirety, we affirm the master's order granting summary judgment on each of the breach of contract causes of action.
NUISANCE
Appellants assert the master erred by granting the Town summary judgment on the nuisance cause of action. Appellants argue the master received affidavits indicating the overgrown nature of the ocean adjacent property has created a breeding ground for an enormous and highly undesirable increase in the populations of bugs, raccoons, snakes, rats, spiders and other unwanted varmints and dangerous animals. Finally, Appellants state the overgrowth poses dangers from fires and criminal activity. Based on Appellants' complaint and the arguments presented in their briefs to this court, we affirm.
**373 "[A] nuisance is 'anything which works hurt, inconvenience, or damages; anything which essentially interferes with the enjoyment of life or property.' " Ravan v. Greenville Cty. , 315 S.C. 447, 463, 434 S.E.2d 296, 306 (Ct. App. 1993) (quoting Neal v. Darby , 282 S.C. 277, 285, 318 S.E.2d 18, 23 (Ct. App. 1984) ). "However, the interference or inconvenience must be unreasonable to be actionable." Id ."Nothing is a public nuisance which the law itself authorizes." Home Sales, Inc. v. City of N. Myrtle Beach , 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989). A governmental entity is not liable for a loss resulting from a nuisance. S.C. Code Ann. § 15-78-60(7) (2005).
We note nothing in the Tort Claims Act prohibits Appellants from pursuing a nuisance theory in order to seek an injunction to abate the nuisance. See S.C. Code Ann. § 15-78-50(c) (2005). However, as framed in Appellant's complaint and the briefs, the basis of Appellants' nuisance claims is "[b]y breaching the Deed Restrictions, the Town has allowed the overgrowth of the vegetation on *245 the accreted land into a maritime forest that serves as breeding grown[d] for pests and varmint, poses a fire hazard, and provides cover for criminal behavior." Appellants assert, "[e]quity demands that the Town Government abate these dangers and honor its contractual obligations to the citizens of Sullivan's Island." Appellants' arguments sound in contract, not in tort. Indeed, Appellants acknowledged as much during oral argument. Because we find the contract does not require the Town to clear the land, we also affirm the master's order granting summary judgment on Appellants' nuisance cause of action.
CONCLUSION
Accordingly, the decision of the circuit court is
AFFIRMED.[4]
WILLIAMS and KONDUROS, JJ., concur.

S.C. Code Ann. §§ 39-5-10 to -180 (1985 & Supp. 2017).

Appellants' inverse condemnation and SCUTPA claims are not at issue in this appeal.

This was the final order in the record. Appellants filed a motion for reconsideration and clarification asking the master to indicate which causes of action survived for trial. The order denying the motion for reconsideration does not indicate which, if any, causes of action the master did not dismiss. Based on the record before us, we cannot determine what causes of action remain.

Appellants also assert the master erred by: (1) finding Appellants could not prove an injury because they had not requested a permit from SCDHEC to allow them to cut on the property; and (2) finding the Tort Claims Act provides the Town with immunity from a claim for breach of contract accompanied by a fraudulent act. Because we find the town has not breached a contract, we decline to reach these additional sustaining grounds. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598, (1999) (holding an appellate court need not address remaining issues when the disposition of a prior issue is dispositive).