# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Edgewater on Broad Creek Owners Association, Inc. and the Council of Co-owners of the Edgewater on Broad Creek Horizontal Property Regime Phase I, Plaintiffs,

Of which The Edgewater on Broad Creek Owners Association, Inc. is Respondent,

v.

Ephesian Ventures, LLC, Appellant.

Appellate Case No. 2016-001789

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-In-Equity

———————

Opinion No. 5724
Heard February 12, 2020 – Filed May 6, 2020

———————

**AFFIRMED**

———————

M. Dawes Cooke, Jr., Kenneth Michael Barfield, and Anna Louise Strandberg, all of Barnwell Whaley Patterson & Helms, LLC, of Charleston, for Appellant.

William Weston Jones Newton and F. Ward Borden, both of Jones Simpson & Newton, P.A., of Bluffton; Michael W. Mogil, of Law Office of Michael W. Mogil, P.A., of Hilton Head Island; and James B. Richardson, Jr., of Columbia, all for Respondent.

———————

**WILLIAMS, J.:** In this civil matter, Ephesian Ventures, LLC (Ephesian) appeals the master-in-equity's order granting partial summary judgment to The Edgewater on Broad Creek Owners Association, Inc. (the Association). We affirm.

## FACTS/PROCEDURAL HISTORY

Broad Creek Edgewater, L.P. (Developer) planned to develop, in various phases, luxury condominiums on 23.65 acres of land (the Property) located on Hilton Head Island.[1] Developer designated 7.64 acres of the Property as Phase I and constructed a clubhouse and a condominium building containing twenty-three units. On December 31, 2002, Developer recorded a master deed in Beaufort County, which created The Edgewater on Broad Creek Horizontal Property Regime (the Regime) and subjected Phase I to the South Carolina Horizontal Property Regime Act.[2] Developer recorded various exhibits with the master deed, including the Regime's bylaws, which formed the Association to manage the operations of the Regime. By October 2006, all twenty-three units located in Phase I were sold to bona fide purchasers, and the circuit court formally constituted the Association by order dated October 30, 2006.

Pursuant to the master deed, Developer reserved the right to incorporate the remaining 16.01 acres adjacent to Phase I (the Additional Property) into the Regime in future development phases of the Property. Under the terms of the master deed, this right expired on December 31, 2010.[3] In May 2007, creditors placed Developer into involuntary Chapter 7 bankruptcy, and by order dated May 28, 2008, the United States Bankruptcy Court for the District of South Carolina approved the sale of the Additional Property to Bear Properties, LLC. In addition to Developer's ownership rights to the Additional Property, the bill of sale and quitclaim deed assigned all of Developer's reserved rights declared in the master deed as to Phase I. Thereafter, Bear Properties assigned all rights and interests to

---

[1] The facts are presented in the light most favorable to Ephesian. *See Bennett v. Carter*, 421 S.C. 374, 379–80, 807 S.E.2d 197, 200 (2017) (providing that on appeal from an order granting summary judgment, this court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party).

[2] S.C. Code Ann. §§ 27-31-10 to -300 (2007 & Supp. 2019).

[3] The parties do not dispute that this right has expired.

Appian Visions, LLC, which subsequently assigned its rights and interests to Ephesian on July 7, 2008.[4]

The dispute at issue in this appeal arose when the Association attempted to make improvements to undeveloped property located in Phase I. Specifically, in March 2010, the Association sought a development permit from the Town of Hilton Head Island (the Town) to construct a swimming pool in Phase I. Following a hearing, the Town approved the permit to construct the swimming pool. Thereafter, without seeking a permit from the Town, the Association commenced construction of a tabby walk in Phase I, which would connect the condominium building to the swimming pool. After receiving notice from the Town that a permit was required to construct the tabby walk, the Association filed a permit application on April 12, 2010, which the Town approved on April 15. Ephesian administratively opposed the permit to construct the tabby walk, alleging Phase I was subject to a restrictive covenant that prevented the Association from constructing amenities and recreational facilities without its approval. Consequently, the Town rescinded approval for the development permits for both the tabby walk and the swimming pool, stating it planned to hold the matters in abeyance until the covenant issue was resolved.[5]

On July 19, 2011, the Association filed a summons and complaint against Ephesian, seeking a declaratory judgment as to Ephesian's reserved rights to Phase I.[6] On February 26, 2015, the Association filed a motion for partial summary judgment, seeking a declaratory judgment as to the parties' rights regarding Phase I. Specifically, the Association sought an order stating it had the right to (1) "construct a swimming pool and other common or recreational amenities on its land, subject only to the land use requirements imposed by the Town . . . , free from interference, supervision[,] or veto by [Ephesian]" and (2) "to construct improvements on the unimproved portions of Phase I . . . subject only to the land use requirements imposed by the Town . . . , and free from interference,

---

[4] Ephesian did not elect to submit any of the Additional Property to the Regime prior to the expiration of its right to do so. The Additional Property remains undeveloped except for an abandoned swimming pool, walkways between Phase I and the swimming pool, and a partially constructed building.

[5] Four pending administrative appeals are being held in abeyance until the resolution of this appeal.

[6] In its complaint, the Association also asserted a nuisance claim against Ephesian, which is not at issue in this appeal.

supervision[,] or veto by [Ephesian]."[7]  On September 21, 2015, the master held a hearing on the motion and issued an order granting partial summary judgment to the Association on February 19, 2016.  Ephesian subsequently filed a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, on March 8, 2016, and the master held a hearing on July 11, 2016.  Via a Form 4 order dated July 12, 2016, the master denied Ephesian's motion.  This appeal followed.

## ISSUES ON APPEAL

I.   Did the master err in finding the language of the master deed did not grant Ephesian an exclusive restrictive covenant regarding the construction of amenities and recreational facilities on Phase I?

II.  Did the master's order exceed the scope of summary judgment such that it prejudiced Ephesian's remaining claims pending before the circuit court?

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the master pursuant to Rule 56, SCRCP.  *Penza v. Pendleton Station, LLC*, 404 S.C. 198, 203, 743 S.E.2d 850, 852 (Ct. App. 2013).  Summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  "In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party."  *Id.* at 203, 743 S.E.2d at 852–53.  "Thus, the appellate court reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party."  *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 240, 672 S.E.2d 799, 802 (Ct. App. 2009).  "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine."  *McMaster v. Dewitt*, 411 S.C. 138, 143, 767 S.E.2d 451, 453–54 (Ct. App. 2014) (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)).  "Summary judgment is a drastic remedy that should be cautiously invoked in order not to improperly deprive a litigant of a trial of the

---

[7] In its motion for partial summary judgment, the Association also sought relief declaring that Ephesian's claims as a successor to Developer (1) to use the existing clubhouse on Phase I as a sales office and (2) to relocate Phase I's current ingress and egress to Marshland Road had both extinguished.  The master granted this relief in its order; however, these rights are not at issue in this appeal.

disputed factual issues." *HK New Plan Exch. Prop. Owner I, LLC v. Coker*, 375 S.C. 18, 22, 649 S.E.2d 181, 183 (Ct. App. 2007).

## LAW/ANALYSIS

## I.     Partial Summary Judgment

Ephesian argues the master erred in granting partial summary judgment to the Association because the master deed unambiguously reserved Ephesian the exclusive right to construct additional amenities and recreational facilities on Phase I. Ephesian therefore contends the master erred in finding the plain language of the master deed permitted the Association to construct the swimming pool and tabby walk without seeking Ephesian's approval. Ephesian contends, at a minimum, the language of the master deed regarding the extent of Ephesian's reserved rights as to Phase I is ambiguous and reasonably susceptible to more than one interpretation and, thus, the master improperly granted summary judgment. We disagree.

When a motion for summary judgment involves a question as to the construction of a deed, the master must first determine whether the language of the deed is ambiguous. *See Coker*, 375 S.C. at 23, 649 S.E.2d at 184 ("Whe[n] a motion for summary judgment presents a question as to the construction of a written contract, if the language employed by the agreement is plain and unambiguous, the question is one of law."); *Penza*, 404 S.C. at 204, 743 S.E.2d at 853 ("The construction of a clear and unambiguous deed is a question of law for the court." (quoting *Hunt v. Forestry Comm'n*, 358 S.C. 564, 568, 595 S.E.2d 846, 848 (Ct. App. 2004))); *Doyle*, 381 S.C. at 242, 672 S.E.2d at 803 ("Thus, the initial determination for a court seeking to ascertain whether a grant of summary judgment based on a settlement agreement's interpretation is proper is whether the agreement is ambiguous."). "The language in a deed is ambiguous if it is reasonably susceptible to more than one interpretation." *Penza*, 404 S.C. at 204, 743 S.E.2d at 853 (quoting *Proctor v. Steedley*, 398 S.C. 561, 573 n.8, 730 S.E.2d 357, 363 n.8 (Ct. App. 2012)). In making this determination, the master must consider the language of the entire deed rather than the effect of an "isolated clause." *Doyle*, 381 S.C. at 242, 672 S.E.2d at 803. The master "is without authority to consider parties' secret intentions" and "words cannot be read into a [deed] to impart an intent unexpressed" when the deed was recorded. *Id.* at 241, 672 S.E.2d at 802. Therefore, "summary judgment is proper and a trial unnecessary whe[n] the intention of the parties as to the legal effect of the [deed] may be gathered from the four corners of the instrument itself." *Coker*, 375 S.C. at 23, 649 S.E.2d at 184 (quoting *First-Citizens Bank & Tr. Co. v. Conway Nat'l Bank*, 282 S.C. 303, 305,

317 S.E.2d 776, 777 (Ct. App. 1984)).  When the deed language contains ambiguities that require extrinsic evidence to determine the intentions of the parties, the inquiry becomes a question of fact and summary judgment must be denied.  *See Doyle*, 381 S.C. at 242, 244–45, 672 S.E.2d at 803–04.

In its order granting partial summary judgment, the master found the declaratory relief sought by the Association was appropriate, stating:

> There is no restrictive covenant that is controlling to, conflicts with, or prohibits [the Association] from making improvements on the property of the Regime; any claim of [Ephesian] of a right to improve [Phase I] is *non-exclusive* and is expressly limited to improvements "pertaining to The Edgewater on Broad Creek Horizontal Property Regime."

(emphasis added).  The master therefore found the Association was entitled to "construct a swimming pool and/or other common or recreational amenities on the common elements of [Phase I], subject to the land use requirements imposed by the Town . . . , but free from any prior approval or veto by [Ephesian]."  We agree with the master's assessment of the plain language of the master deed.

The relevant provisions of the master deed are as follows:[8]

Section 14 entitled "Provisions and Covenants Applicable to Units" states, "The Units shall also be conveyed subject to the recorded plat and plans of the Property and Amendments thereto and those certain covenants, restrictions, easements and other matters of title as more particularly described at **Exhibit "A"** hereto."

Exhibit A to the master deed provides a description of Phase I and the reserved rights of Developer.  It states, "[T]he Declarant *expressly reserves* the right to improve the aforementioned property by clearing, tree pruning, constructing additional parking and *common facilities, including, but not necessarily limited to recreational facilities*, drainage facilities, *lagoons, and the like*, pertaining to The Edgewater on Broad Creek Horizontal Property Regime." (emphases added).  It further states "the above property is submitted to The Edgewater on Broad Creek

---

[8] In the master deed, Declarant refers to Developer and its assigns, such as Ephesian; Property refers to Phase I; and Exhibit A is a description of the property comprising Phase I.

Horizontal Property Regime subject to all easements as shown on the above plat of record."

Section 6, entitled "Areas Comprising Property," is divided into various subsections. Subsection (b), entitled "Incorporation of Additional Property," details Developer's right to add the Additional Property to the Regime through future development phases. Subsection (b) contains numerated subsections that provide "[a] general description of the plan of development." For example, subsection (b)(5) states, "Declarant, its successors and assigns may, in its sole discretion, incorporate one or more Future Phases into the Regime"; subsection (b)(6) provides, "Declarant may, in its sole discretion, vary the order of inclusion of any and all Future Phases, such that a Phase may be included out of numerical order." In particular, Ephesian's assertions rely on the language of subsection (b)(9). It provides:

> *Any additional amenities or recreational facilities, which may or may not be in the additional Phases, are solely at the option of Declarant.* The description in any sales or promotion[al] literature of the Declarant of any potential additional amenities or recreational facilities shall not, of itself, oblige the Declarant to construct such or to convey them to the Regime as Common Elements.

(emphasis added).

Viewing the facts and inferences in the light most favorable to Ephesian, we agree it maintains a right to construct additional amenities and recreational facilities on Phase I; however, we disagree that this right is exclusive and to the detriment of the Association's ability to improve its property. *See Doyle*, 381 S.C. at 240, 672 S.E.2d at 802 ("[T]he appellate court reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party."). We further find this nonexclusive right stems from the provisions contained in Exhibit A rather than the language of subsection 6(b)(9).

As to Ephesian's contention that the plain language of subsection 6(b)(9) unambiguously reserves it the *exclusive* right to construct additional amenities and recreational facilities on Phase I, we find nothing in the plain language indicates such a right. Ephesian maintains the language "which may or may not be in the additional Phases" naturally incorporates Phase I into its right and the phrase "solely at the option of Declarant" renders the right exclusive. We find Ephesian's

reading of 6(b)(9) relies on a forced construction of the provision. *See Doyle*, 381 S.C. at 242, 672 S.E.2d at 803 (providing that when determining if a deed is ambiguous, the master must consider the language of the *entire deed* rather than the effect of an "isolated clause"); *id.* at 241, 672 S.E.2d at 802 (providing the master "is without authority to consider parties' secret intentions" and "words cannot be read into a [deed] to impart an intent unexpressed" when the deed was recorded); *McMaster*, 411 S.C. at 143, 767 S.E.2d at 453–54 (providing that when opposing a motion for summary judgment, "it is not sufficient for a party to create an inference *that is not reasonable* or an issue of fact that is not genuine" (quoting *Floyd*, 403 S.C. at 477, 744 S.E.2d at 166) (emphasis added)). Moreover, when reading subsection 6(b)(9) within the context of the entire master deed, we find this provision solely pertains to Developer's expired right to incorporate the Additional Property into Phase I, as it is included within that section of the master deed and the surrounding provisions relate to the scope of Developer's rights in adding the Additional Property to Phase I. *See Coker*, 375 S.C. at 23, 649 S.E.2d at 184 ("[S]ummary judgment is proper and a trial unnecessary whe[n] the intention of the parties as to the legal effect of the [deed] may be gathered from the four corners of the instrument itself." (quoting *Conway Nat'l Bank*, 282 S.C. at 305, 317 S.E.2d at 777)). Therefore, we find the master properly found the plain language of the master deed did not provide Ephesian with an exclusive right to construct additional amenities or recreational facilities on Phase I.

As to Ephesian's alternative contention that the language of subsection 6(b)(9) is ambiguous rendering summary judgment improper, we acknowledge this is a closer inquiry and that summary judgment is a drastic remedy. *See Coker*, 375 S.C. at 22, 649 S.E.2d at 183 ("Summary judgment is a drastic remedy that should be cautiously invoked in order not to improperly deprive a litigant of a trial of the disputed factual issues."). However, we find the language of subsection 6(b)(9), though inartful, does not on its face create a factual inquiry as to whether Ephesian's reserved right to improve Phase I, as delineated in Exhibit A, is expanded into an exclusive right. *See Penza*, 404 S.C. at 204, 743 S.E.2d at 853 ("The language in a deed is ambiguous if it is *reasonably susceptible* to more than one interpretation." (quoting *Proctor*, 398 S.C. at 573 n.8, 730 S.E.2d at 363 n.8) (emphasis added)). Further, we find extrinsic evidence is unnecessary to garner the intentions of the parties as the language of the master deed as a whole is unambiguous. Thus, we hold the master did not err in finding the matter appropriate for partial summary judgment. *See Coker*, 375 S.C. at 23, 649 S.E.2d at 184 ("[S]ummary judgment is proper and a trial unnecessary whe[n] the intention of the parties as to the legal effect of the [deed] may be gathered from the

four corners of the instrument itself." (quoting *Conway Nat'l Bank*, 282 S.C. at 305, 317 S.E.2d at 777)).

## II.     Other Issues with the Master's Order

Ephesian contends the master's order is "over broad" and improperly restricts its rights by addressing matters outside of the scope of summary judgment. Specifically, Ephesian contends the master erred in addressing issues unripe for review at the summary judgment stage.  We find this issue is without merit as there is no justiciable controversy before the court.  *See Sloan v. Greenville County*, 356 S.C. 531, 552, 590 S.E.2d 338, 349 (Ct. App. 2003) ("In general, this court may only consider cases where a justiciable controversy exists."); *id.* ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute." (quoting *Pee Dee Elec. Coop. v. Carolina Power Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983))).  The portions of the master's order challenged by Ephesian are admittedly not findings; rather, they are musings of the master on issues that the master acknowledges are unripe for review at the summary judgment stage.  Moreover, we find this issue is unpreserved for appellate review due to Ephesian's failure to address these concerns in its Rule 59(e), SCRCP, motion or at the subsequent hearing.  *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [master] to be preserved for appellate review.").  Accordingly, this court is foreclosed from considering this issue.

## CONCLUSION

Based on the foregoing, the master's order granting partial summary judgment to the Association is

## AFFIRMED.

**KONDUROS and HILL, JJ., concur.**